1 GIBSON, DUNN & CRUTCHER LLP
  KATHERINE V.A. SMITH, SBN 247866
2 ksmith@gibsondunn.com
  333 South Grand Avenue
3 Los Angeles, CA  90071-3197
  Telephone:  213.229.7000
4 Facsimile:  213.229.7520

5 GIBSON, DUNN & CRUTCHER LLP
  JASON C. SCHWARTZ (*Pro Hac Vice* Application To Be Submitted)
6 jschwartz@gibsondunn.com
  1050 Connecticut Avenue, N.W.
7 Washington, DC  11101
  Telephone:  202.955.8500
8 Facsimile:  202.467.0539
  *Attorneys for Defendant Global Linguist Solutions LLC*
9
  LEWIS BRISBOIS BISGAARD & SMITH, LLP
10 JON P. KARDASSAKIS, SBN 90602
  Jon.Kardassakis@lewisbrisbois.com
11 ERIC Y. KIZIRIAN, SBN 210584
  Eric.Kizirian@lewisbrisbois.com
12 MICHAEL K. GRIMALDI, SBN 280939
  Michael.Grimaldi@lewisbrisbois.com
13 221 North Figueroa Street
  Suite 1200
14 Los Angeles, CA 90012
  Telephone:  213.250.1800
15 Facsimile:  213.250.7900
  *Attorneys for DynCorp International LLC*
16

17                    UNITED STATES DISTRICT COURT

18              CENTRAL DISTRICT OF CALIFORNIA

19 ALFRED ZAKLIT, HANY SHAKER,          CASE NO.  CV13-08654-MMM (MANx)
   and MOKHTAR FARAG, *each of them*
20 *individually, and on behalf of all others*   **DEFENDANTS' NOTICE OF**
   *similarly situated,*                **REMOVAL OF CLASS ACTION**
21
                  Plaintiffs,           Los Angeles Superior Court Case No.
22                                       BC523317
              v.
23                                       Complaint Filed: October 4, 2013
   GLOBAL LINGUIST SOLUTIONS
24 LLC, *a Delaware Company*; AECOM      [Declarations of Patricia Phillips, Robyn
   SERVICES, INC., *a California*        Miller, and Katherine V.A. Smith filed
25 *corporation*; DYNCORP               herewith]
   INTERNATIONAL, LLC, *a Delaware*
26 *company*; and DOES 1-250, *inclusive,*
27                  Defendants.
28

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' NOTICE OF REMOVAL OF CLASS ACTION

**TABLE OF CONTENTS**

<u>Page</u>

I.  BACKGROUND ...........................................................................................1

II.  TIMELINESS OF REMOVAL .................................................................4

III.  THE COURT HAS JURISDICTION UNDER THE CLASS ACTION
FAIRNESS ACT ........................................................................................4

    A.  There Are More Than 100 Members in the Putative Class ......................5

    B.  The Named Plaintiffs are Citizens of Different States than GLS and
DynCorp ...................................................................................................5

    C.  The Amount in Controversy Exceeds $5 Million ....................................7

        (1)  Plaintiffs' Allegations Regarding Unpaid Overtime Alone
Establish that the Amount in Controversy Exceeds $5
Million ...........................................................................................8

        (2)  Plaintiffs' Claim for Wages Not Timely Paid Upon
Termination or Resignation Places at Least an Additional $1
Million in Controversy ................................................................13

        (3)  Plaintiffs' Request for Attorneys' Fees Also Places at Least
an Additional $2.2 Million in Controversy ..................................14

IV.  THE COURT HAS DIVERSITY JURISDICTION BASED ON THE
FRAUDULENT JOINDER OF DEFENDANT AECOM SERVICES,
INC. ...........................................................................................................17

V.  VENUE ......................................................................................................20

VI.  CONCLUSION .........................................................................................21

Gibson, Dunn &
Crutcher LLP

i

DEFENDANTS' NOTICE OF REMOVAL OF CLASS ACTION

# TABLE OF AUTHORITIES

**Cases**                                                                 Page(s)

*Abrego Abrego v. The Dow Chemical Co.,*
    443 F.3d 676 (9th Cir. 2006) ...................................................................6

*Altamirano v. Shaw Indus., Inc.,*
    No. C-13-0939-EMC, 2013 WL 2950600 (N.D. Cal. June 14, 2013).......... 9, 12, 13

*Behrazfar v. Unisys Corp.,* 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009)...........12

*Brown v. Allstate Ins. Co.,*
    17 F. Supp. 2d 1134 (S.D. Cal. 1998) ..............................................18, 19

*Deaver v. BBVA Compass Consulting and Benefits, Inc.,*
    --- F. Supp. ----, 2013 WL 2156280 (N.D. Cal. May 17, 2013)............................15

*Galt G/S v. JSS Scandinavia,*
    142 F.3d 1150 (9th Cir. 1998) ...............................................................15

*Garibay v. Archstone Cmtys. LLC,*
    --- Fed. App'x. ----, 2013 WL 4517934 (9th Cir. Aug. 27, 2013) ...............15

*Guglielmino v. McKee Foods Corp.,*
    506 F.3d 696 (9th Cir. 2007) ..................................................................7

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) .................................................................15

*Haynes v. EMC Morg. Corp.,*
    No. C 10-00372-WHA, 2010 WL 1445650 (N.D. Cal. Apr. 12, 2010)...................6

*Hunter v. Philip Morris USA,*
    582 F.3d 1039 (9th Cir. 2009) .................................................................1

*Inter-Ocean Seafood Trader, Inc. v. RF Int'l, Ltd.,*
    C-11-06675 JCS, 2012 WL 1601326 N.D. Cal. May 7, 2012) .............................20

*Jernigan v. Ashland Oil Inc.,*
    989 F.2d 812 (5th Cir. 1993) .................................................................19

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,*
    199 F. Supp. 2d 993 (C.D. Cal. 2002)........................................................7

*Korn v. Polo Ralph Lauren Corp.,*
    536 F. Supp. 2d 1199 (E.D. Cal. 2008) ......................................................8

*Lowdermilk v. U.S. Bank Nat'l Ass'n,*
    479 F.3d 994 (9th Cir. 2007) ..................................................................15

*Montecino v. Spherion Corp.,*
    427 F. Supp. 2d 965 (C.D. Cal. 2006) ........................................................13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Morris v. Princess Cruises, Inc.,*
  236 F.3d 1061 (9th Cir. 2001) ............................................................... 17, 18

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,*
  526 U.S. 344 (1999) ........................................................................................... 4

*Pineda v. Bank of America, N.A.,*
  241 P.3d 870 (Cal. 2010) ............................................................................... 13

*Prestar Fin. Corp. v. Infraegis, Inc.,*
  SACV 09-899 AG RNBX, 2009 WL 3425348 (C.D. Cal. Oct. 19, 2009) ............ 20

*Ritchey v. Upjohn Drug Co.,*
  139 F.3d 1313 (9th Cir. 1998) ....................................................................... 18

*Salkin v. United Servs. Auto. Ass'n,*
  767 F. Supp. 2d 1062 (C.D. Cal. 2011) ....................................................... 19

*Serrano v. 180 Connect, Inc.,*
  478 F.3d 1018 (9th Cir. 2007) ......................................................................... 6

*Thomas v. Home Depot USA Inc.,*
  527 F. Supp. 2d 1003 (N.D. Cal. 2007) ......................................................... 9

*Tokio Marine & Fire Ins. Co. v. Nippon Express U.S.A. Inc.,*
  118 F. Supp. 2d 997 (C.D. Cal. 2000) ......................................................... 20

*Visendi v. Bank of Am., N.A.,*
  --- F.3d ----, 2013 WL 57354802 (9th Cir. Oct. 23, 2013) ............................. 6

*Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) .................... 5

*Zogbi v. Federated Dep't Store,*
  767 F. Supp. 1037 (C.D. Cal. 1991) ............................................................. 19

**Statutes**

28 U.S.C. § 1332 ........................................................................... 1, 4, 5, 6, 16

28 U.S.C. § 1441 ....................................................................... 1, 4, 16, 17, 19

28 U.S.C. § 1446 ........................................................................... 1, 4, 16, 20

28 U.S.C. § 1453 ................................................................................... 1, 16

28 U.S.C. § 84 ........................................................................................ 19

Cal. Bus. & Prof. Code § 17200 ................................................................. 2

Cal. Bus. & Prof. Code § 17208 ................................................................. 8

Cal. Civ. Pro. § 340 ............................................................................... 9

Cal. Lab. Code § 1194 ..................................................................... 2, 3, 14

iii

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
(continued)

Page(s)

Cal. Lab. Code § 1198 ..................................................................................

Cal. Lab. Code § 201 ........................................................................... 2, 3, 12

Cal. Lab. Code § 202 ........................................................................... 2, 3, 12

Cal. Lab. Code § 203 ............................................................................ 3, 12, 13

Cal. Lab. Code § 218 ..................................................................................... 14

Cal. Lab. Code § 2698 ..................................................................................... 9

Cal. Lab. Code § 510 ............................................................................... 2, 3, 8

Cal. Lab. Code § 515 ....................................................................................... 8

Cal. Lab. Code § 558 .................................................................................... 8, 9

Cal. Lab. Code § 970 ....................................................................................... 2

**Other Authorities**

California Private Attorneys General Act of 2004 ........................................ 9

Theodore Eisenberg & Geoffrey Miller, *Attorneys' Fees and Expenses in Class Action Settlements*, 7 J. EMPIRICAL LEGAL STUD. 248 (2010) ........................ 15

DEFENDANTS' NOTICE OF REMOVAL OF CLASS ACTION

1    **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR**

2   **THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION, AND**

3   **ALL PARTIES OF RECORD:**

4      **PLEASE TAKE NOTICE** that under 28 U.S.C. §§ 1332, 1441, 1446 and 1453,

5 Defendants Global Linguist Solutions LLC ("GLS") and DynCorp International LLC

6 ("DynCorp") hereby remove the above-captioned action from the Superior Court of the

7 State of California for the County of Los Angeles to the United States District Court

8 for the Central District of California, Western Division.  For the reasons set forth

9 below, this Court has original jurisdiction over this action under the Class Action

10 Fairness Act.  *See* 28 U.S.C. §§ 1332(d)(2); 1332(d)(6).  In the alternative, this Court

11 has original jurisdiction over this action on the basis of complete diversity because

12 Defendant AECOM Services, Inc. was fraudulently joined.  *See* 28 U.S.C. § 1332(a);

13 *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).  Removal is thus

14 proper under 28 U.S.C. §§ 1441, 1446, and 1453.

15 **I.**   **BACKGROUND**

16     1.    On October 4, 2013, Plaintiffs Alfred Zaklit, Hany Shaker, and Mokhtar

17 Farag (collectively, "Plaintiffs") filed a putative class action against GLS, DynCorp,

18 and AECOM Services, Inc. (collectively, "Defendants") in Los Angeles Superior

19 Court (Case No. BC523317) (the "Putative Class Action").  The case is captioned as

20 *Alfred Zaklit, Hany Shaker, and Mokhtar Farag, each of them individually, and on*

21 *behalf of all others similarly situated, vs. Global Linguist Solutions, LLC, a Delaware*

22 *company; AECOM Services, Inc., a California corporation; DynCorp International,*

23 *LLC, a Delaware company; and Does 1 through 250, inclusive.  See* Declaration of

24 Katherine V.A. Smith in Support of Defendants' Notice of Removal ("Smith Decl." or

25 "Smith Declaration"), Ex. A (hereinafter, "Compl.").

26     2.    A true and correct copy of the Complaint and Proofs of Service on GLS

27 and DynCorp in the Putative Class Action are attached as Exhibits A and B to the

28 Smith Declaration.  *See* Compl.); *see also* Smith Decl., Ex. B.

Gibson, Dunn & Crutcher LLP

1

DEFENDANTS' NOTICE OF REMOVAL OF CLASS ACTION

3.    On November 7, 2013, the Los Angeles Superior Court issued an Initial Status Conference Order, designating the case as complex and staying all proceedings pending the Initial Status Conference, which was scheduled for December 30, 2013. *See* Smith Decl., Ex. C.

4.    There have been no filings or proceedings in the Putative Class Action since the Court issued its November 7, 2013 Order. *See* Smith Decl. ¶ 4.

5.    In their Complaint, Plaintiffs allege sixteen causes of action against Defendants for:

(1)    Violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*;

(2)    False imprisonment;

(3)    Breach of the implied covenant of good faith and fair dealing;

(4)    Negligent hiring and retention;

(5)    Wrongful termination in violation of public policy;

(6)    Wrongful demotion in violation of public policy;

(7)    Disability discrimination in violation of the Fair Employment and Housing Act ("FEHA");

(8)    Failure to provide reasonable accommodation in violation of the FEHA;

(9)    Failure to engage in an interactive process in violation of the FEHA;

(10)    False representations in violation of California Labor Code § 970;

(11)    Hostile work environment;

(12)    Failure to pay overtime in violation of California Labor Code §§ 510, 1194, and 1198;

(13)    Failure to timely pay wages due upon termination or resignation in violation of California Labor Code §§ 201 and 202;

(14)    Intentional infliction of emotional distress;

Gibson, Dunn & Crutcher LLP

2

DEFENDANTS' NOTICE OF REMOVAL OF CLASS ACTION

1      (15)   Negligent infliction of emotional distress; and

2      (16)   Rescission. *See* Compl.

3      6.     Plaintiffs purport to bring these claims on their own behalf and on behalf of a putative class, which they define as "[a]ll current and/or former employees that worked for Defendants as Arabic Linguists in the Middle East at any time after the date four years prior to the filing of this Complaint." *Id.* ¶ 40.[1]

7      7.     Plaintiffs allege that the putative class "is estimated to be greater than one hundred (100) individuals." *Id.* ¶ 43(a).

9      8.     In their twelfth cause of action—alleging violations of California Labor Code §§ 510, 1194, and 1198—Plaintiffs maintain that they and other members of the putative class were required to work "12 hours per day, 6 days per week, totaling a minimum of 72 hours per week." *Id.* ¶ 157. Plaintiffs claim that Defendants "willfully" violated the California Labor Code by failing to pay them and the other putative class members at their "proper overtime rate" for all hours worked in excess of eight hours per day or 40 hours per week. *Id.* ¶¶ 156-158. In this Count, Plaintiffs seek to recover alleged unpaid overtime on behalf of themselves and the putative class, as well as statutory penalties and attorneys' fees. *Id.* ¶ 159.

18      9.     In the thirteenth cause of action—seeking wages allegedly not timely paid upon termination or resignation in violation of California Labor Code §§ 201 and 202—Plaintiff Farag claims that Defendants "willfully" failed to pay him and the other

---

[1] The fifth and thirteenth causes of action—for wrongful termination in violation of public policy and wages not timely paid upon termination or resignation—are brought only on behalf of Plaintiff Farag and the putative class. *See* Compl. ¶¶ 92-99; 160-165. The sixth cause of action—demotion in violation of public policy—is brought only on behalf of Plaintiff Zaklit and the putative class. *See id.* ¶¶ 100-107. All of the remaining claims are brought on behalf of each of the named Plaintiffs and the putative class.

members of the putative class "their wages . . . earned and unpaid either at the time of discharge, or within seventy-two hours of leaving Defendants' employ," and he seeks for himself and the putative class members "statutory penalty wages for each day they were not paid, at their regular hourly rate of pay, up to a thirty (30) day maximum pursuant to California Labor Code § 203." *Id.* ¶¶ 162, 165.

10.     Elsewhere in their Complaint, Plaintiffs seek reasonable attorneys' fees and costs incurred "in obtaining the benefits due [to] Plaintiffs and Class members; and for violations of Plaintiff's [sic] civil rights." *Id.*, Prayer for Relief, ¶¶ 15-16.

11.     GLS and DynCorp deny any liability in this case, both as to Plaintiffs' individual claims and as to the class claims, and will present compelling defenses to these claims. GLS and DynCorp also intend to oppose class certification. GLS and DynCorp reserve all rights to oppose class certification and to contest the merits of all claims asserted in the Complaint. But for the limited purpose of satisfying the removal requirements *only*, GLS and DynCorp accept the allegations in the Complaint as true.

## II.     TIMELINESS OF REMOVAL

12.     GLS and DynCorp were each served with a copy of the summons and Complaint on October 23, 2013. *See* Smith Decl., Ex. B.

13.     This Notice of Removal is timely as it is filed within 30 days of service of the Complaint. *See* 28 U.S.C. § 1446(b); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

14.     AECOM Services, Inc. consents to this removal.

## III.     THE COURT HAS JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

Removal of a class action under the Class Action Fairness Act ("CAFA") is proper if: (1) there are at least 100 members in the putative class; (2) there is minimal diversity between the parties, such that at least one class member is a citizen of a state

1  different from the state of any defendant; and (3) the aggregate amount in controversy

2  exceeds $5 million, exclusive of interests and costs.  *See* 28 U.S.C. § 1332(d); 28

3  U.S.C. § 1441; *see also Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th

4  Cir. 2011) (citing 28 U.S.C. § 1332(d)(2), (5)(B), (6)).  Because all three requirements

5  are satisfied in this case, removal under CAFA is appropriate.

6  **A.    There Are More Than 100 Members in the Putative Class**

7      15.    Plaintiffs define the "proposed Class" as "[a]ll current and/or former

8  employees that worked for Defendants as Arabic Linguists in the Middle East at any

9  time after the date four years prior to the filing of this Complaint." Compl. ¶ 40.

10  Plaintiffs allege that the putative class is "estimated to be greater than one hundred

11  (100) individuals." *Id.* ¶ 43(a).  This estimate is further corroborated by GLS's

12  employment records, which show that GLS employed 1,279 individuals as Arabic

13  Linguists in the Middle East in the four years prior to the filing of Plaintiffs'

14  Complaint.  *See* Declaration of Patricia Phillips (hereinafter, "Phillips Decl.") ¶ 9(a).

15  Accordingly, there are more than 100 members in the putative class.

16  **B.    The Named Plaintiffs are Citizens of Different States than GLS and**

17     **DynCorp**

18      16.    The named Plaintiffs are all residents and citizens of the state of

19  California. *See* Compl. ¶¶ 11-13.

20      17.    Both GLS and DynCorp are Delaware limited liability companies

21  ("LLCs") with their principal place of business in Virginia. *Id.* ¶¶ 15, 17.  GLS and

22  DynCorp are therefore citizens of Delaware and Virginia—not California. 28 U.S.C. §

23  1332(c)(1) (explaining that "a corporation shall be deemed to be a citizen of every

24  State and foreign state by which it has been incorporated and of the State or foreign

25  state where it has its principal place of business").

26      18.    Because the named Plaintiffs' citizenship is different from that of GLS

27  and DynCorp, CAFA's minimal diversity requirement is satisfied.  28 U.S.C. §

28  1332(d)(2); *see also Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 680 (9th

Cir. 2006) (explaining that "Section 1332(d) . . . abandons the complete diversity rule for covered class actions" and requires only "minimal diversity" between the parties, meaning that at least one plaintiff is a citizen of a state different from the state of any defendant).

19.     For purposes of removal, this Court need not consider the applicability of the so-called "local controversy" or "home-state controversy" exceptions to CAFA, as the Ninth Circuit has held that these exceptions are not jurisdictional. *See Visendi v. Bank of Am., N.A.*, --- F.3d ----, 2013 WL 57354802, at *4 (9th Cir. Oct. 23, 2013). Moreover, the burden is not "on the removing party to show the *inapplicability* of the exceptions"; rather, the burden is on the party seeking remand to prove the *applicability* of the exceptions. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021-22 (9th Cir. 2007) (emphasis added).

20.     Nevertheless, neither the "local controversy" nor the "home-state controversy" exceptions apply here. Under the local controversy exception, a district court shall decline to exercise CAFA jurisdiction over a class action in which, among other requirements, a defendant from whom "*significant* relief is sought" and whose conduct forms "a *significant* basis for the claims asserted" is "a citizen of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i)(II) (emphasis added). Similarly, under the home-state controversy exception, a district court shall decline to exercise CAFA jurisdiction over a class action in which, among other requirements, "the *primary* defendants . . . are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B) (emphasis added). Here, the only defendant that is a citizen of California is AECOM Services, Inc., and AECOM Services, Inc. is neither the "primary" defendant to this Putative Class Action, nor a defendant whose conduct forms "a significant basis for the claims asserted." *See generally Haynes v. EMC Morg. Corp.*, No. C 10-00372-WHA, 2010 WL 1445650, at *4 (N.D. Cal. Apr. 12, 2010) (explaining that the "significant basis" language requires

1   "a comparison between the local defendant's significance and the significance of all

2   the defendants"); *see also* Section IV, *infra*.

3       21.    AECOM Services, Inc. is not and has never been Plaintiffs' employer, nor

4   does it have any connection whatsoever to any of the claims that have been asserted by

5   Plaintiffs.  *See* Miller Decl. ¶¶ 4-5.  Indeed, AECOM Services, Inc. is not even a

6   member of the GLS LLC; the actual member of that LLC is AECOM National

7   Security Programs, Inc.—which is not a citizen of California.  *See id.* ¶ 6.  Because

8   AECOM Services, Inc. is neither the "primary" defendant, nor a defendant whose

9   conduct forms a "significant basis" for the claims asserted, neither the local

10   controversy nor home-state controversy exception to CAFA jurisdiction applies.

11   **C.**    <u>**The Amount in Controversy Exceeds $5 Million**</u>

12       22.    Plaintiffs do not plead a specific amount in controversy, other than to state

13   that "[t]he monetary damages and restitution sought by Plaintiffs exceed the minimal

14   jurisdiction limits of the [Los Angeles] Superior Court," and the "penalties sought by

15   Plaintiffs exceed the minimal jurisdiction limits of the Superior Court." Compl. ¶ 7.

16       23.    Where it is "unclear or ambiguous from the face of a state-court complaint

17   whether the requisite amount in controversy is pled," the Ninth Circuit applies "a

18   preponderance of the evidence standard" to determine whether removal under CAFA is

19   proper. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007).  A

20   defendant seeking to remove under CAFA need only "provide evidence establishing

21   that it is 'more likely than not' that the amount in controversy exceeds [the

22   jurisdictional] amount'" of $5 million. *Id.*

23       24.    Moreover, in assessing whether the amount in controversy has been

24   satisfied, "a court must assume that the allegations of the complaint are true and that a

25   jury will return a verdict for the plaintiff on all claims made in the complaint."

26   *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001

27   (C.D. Cal. 2002).  In other words, the focus of the Court's inquiry must be on "what

28   amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will

actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008).   Although GLS and DynCorp deny all liability with respect to each of Plaintiffs' sixteen causes of action, the allegations in the Complaint place significantly more than $5 million "in controversy" for purposes of removal under CAFA.

### (1) Plaintiffs' Allegations Regarding Unpaid Overtime *Alone* Establish that the Amount in Controversy Exceeds $5 Million

25.   In their twelfth cause of action, Plaintiffs maintain that Defendants "willfully" violated the California Labor Code by requiring them and other members of the putative class to work "12 hours per day, 6 days per week, totaling a minimum of 72 hours per week," without paying them "at their proper overtime rate" for all hours worked in excess of eight hours per day or 40 hours per week. Compl. ¶¶ 156-157.   Plaintiffs request unpaid overtime compensation on behalf of themselves and the putative class, as well as statutory penalties and reasonable attorneys' fees. *Id.* ¶ 159.

26.   California law requires that employers compensate salaried non-exempt employees for time worked in excess of 8 hours per day or 40 hours per week at 1.5 times their "regular rate" of pay, where the regular rate reflects $1/40^{th}$ of the employee's weekly salary. *See* Cal. Lab. Code §§ 510(a); 515(d)(1)-(2).   Because Plaintiffs allege that Defendants' failure to pay overtime compensation constitutes unlawful or unfair activity in violation of the UCL, *see* Compl. ¶¶ 56-62, they seek to recover unpaid overtime for a period of four years preceding the filing of the Complaint. *See* Cal. Bus. & Prof. Code § 17208 (establishing a four-year statute of limitations for UCL causes of action).

27.   In addition, California law provides that an employer who fails to pay required overtime compensation "shall be subject to a civil penalty" in the amount of $50 for each underpaid employee for each pay period for which the employee was underpaid. *See id.* § 558(a)(1).   The statute of limitations for the recovery of civil penalties under the California Private Attorneys General Act of 2004, Cal. Lab. Code § 2698 *et seq.* ("PAGA") is one year, as provided in Cal. Civ. Pro. § 340(a). *See Thomas*

*v. Home Depot USA Inc.*, 527 F. Supp. 2d 1003, 1007-08 (N.D. Cal. 2007).  California courts have found that the unpaid wage penalties in Labor Code § 558 are subject to the PAGA's one-year statute of limitations.  *See Altamirano v. Shaw Indus., Inc.*, No. C-13-0939-EMC, 2013 WL 2950600, at *10 (N.D. Cal. June 14, 2013) (applying a one-year statute of limitations to calculate, for purposes of removal, the amount placed in controversy by Labor Code § 558(a)(1)-(2) penalties).

28.     Based on GLS's records, GLS has employed approximately 1,412 linguists in the Middle East in the four years prior to the filing of the Complaint, and these 1,412 linguists have been employed for a total of 22,944 biweekly pay periods between October 4, 2009 and October 4, 2013.  *See* Phillips Decl. ¶ 8.

29.     1,279 of these 1,412 linguists were Arabic-speaking.  *See id.* ¶ 9(a).  Of these 1,279 Arabic-speaking linguists, 188 had permanent residence addresses in California at the time of their employment with GLS.  *Id.* ¶ 9(b).[2]  In other words, approximately 90.6% of all linguists employed by GLS during this time-frame were Arabic-speaking, and approximately 14.7% of all Arabic-speaking linguists employed by GLS during this time-frame had permanent residences in California.  *Id.* ¶ 9(a)-(b).

---

[2]  Although Plaintiffs do not define the putative class to include only California residents, Defendants assume for removal purposes that Plaintiffs only intend to bring claims under California law on behalf of California residents.  Significantly, Defendants maintain that even the members of the putative class who are California residents are *not* entitled to claim the protections of California wage-and-hour laws with respect to work performed *outside the United States*.  Defendants also do not concede that these members of the putative class can assert claims under California law with respect to work performed in the United States, but outside California.  Nevertheless, for purposes of removal *only*, Defendants accept as true Plaintiffs' allegation that these members of the putative class may assert claims under California law.

DEFENDANTS' NOTICE OF REMOVAL OF CLASS ACTION

Gibson, Dunn & Crutcher LLP

30.     Based on the conservative assumption that all 188 of the Arabic-speaking, California-based linguists employed by GLS during the four years prior to the filing of the Complaint were so-called "CAT-I" linguists—the lowest level of linguist employed by GLS, with the corresponding lowest annual salary—these linguists would have earned a minimum annual salary of $62,000. *See* Phillips Decl. ¶ 7.

31.     Finally, assuming for removal purposes *only* that Plaintiffs' allegations with respect to the amount of unpaid overtime hours worked are true (*i.e.*, a minimum of 32 overtime hours worked by each class member per week), then the total amount in controversy based on Plaintiffs' unpaid overtime claim *alone* is more than *$8.7 million*, calculated as follows:

| | |
|---|---|
| Average No. of Weeks Worked per Class Member 10/09-10/13: (22,944 pay periods / 1,412 linguists = 16.25 pay periods * 2 [paid biweekly]) | 32.5 weeks |
| Average Hourly Rate ($62,000 average annual salary / 52 weeks / 40 hours per week) | $29.80 |
| Number of Alleged Unpaid Overtime Hours per Class Member: (32 hours per week * 32.5 weeks) | 1,040 hours |
| Unpaid Overtime Compensation Allegedly Due per Class Member (1,040 * $29.8 * 1.5) | $46,488 |
| Total Alleged Unpaid Overtime Compensation for Putative Class ($46,488 * 188) | $8,739,744 |
| Section 558(a)(1) Penalties for Putative Class: ($50 * 188 class members* [16.25 pay periods]/4) | $38,187.50 |
| Amount in Controversy Based on Unpaid Overtime Claim | *$8,777,931.50* |

32.     Thus, Plaintiffs' twelfth cause of action *alone* thus places in controversy almost *double* the minimum jurisdictional amount under CAFA.

33.     Moreover, even without relying on GLS's data regarding the total number of pay periods worked by the putative class during the relevant time-frame, it is clear

10

Gibson, Dunn & Crutcher LLP

that Plaintiffs' unpaid overtime claim places more than $5 million in controversy, based simply on the named Plaintiffs' own allegation that they are representative of the class they seek to represent, and thus, that the dates of employment and amounts of unpaid overtime allegedly worked by the named Plaintiffs are representative of the dates of employment and amount of unpaid overtime worked by the putative class.

34.    Plaintiffs Zaklit and Shaker allege that they have been employed as linguists for Defendants from September 2012 to the present, *see* Compl. ¶¶ 11-13, while Plaintiff Farag alleges that he was employed as a linguist for Defendants from September 2012 to August 2013, *see id.* ¶ 36.

35.    The Named Plaintiffs further assert that they—and all other members of the putative class, which they estimate to be greater than 100 individuals, *see id.* ¶ 43(a)—worked a "minimum of 72 hours per week" during their employment, *id.* ¶ 157.

36.    Given these allegations, and using the lowest possible annual salary for linguists during the relevant period ($62,000), the amount of unpaid overtime allegedly due to a putative class of 100, based on the dates of employment and overtime allegedly worked by the named Plaintiffs, would be almost ***$7.9 million***, as shown below:

| | *Alleged Unpaid Overtime* | *Section 558(a)(1) Penalties* | *Amount in Controversy* |
| --- | --- | --- | --- |
| Plaintiff Farag *9/1/12 – 8/30/13* | (32 hours per week * $29.80[3] hourly rate * 1.5 * 51 weeks = $72,950.40) | ($50 * 23 pay periods[4]) = $1,150 | $74,100.40 |

---

[3] This hourly rate is based on the lowest annual salary for a CAT-I linguist from 2009 through 2013: $62,000. *See* Phillips Decl. ¶ 7.

[4] Because the statute of limitations for the recovery of penalties under Section 558(a) is one year, Plaintiffs may only recover such penalties to the extent they were incurred after October 4, 2012.

DEFENDANTS' NOTICE OF REMOVAL OF CLASS ACTION

| | | | |
|---|---|---|---|
| Plaintiff Zaklit<br>*9/1/12 – 10/4/13* | (32 hours per week *<br>$29.80 hourly rate * 1.5 *<br>56 weeks = $80,102.40) | ($50 * 26 pay<br>periods) = $1,300 | $81,402.40 |
| Plaintiff Shaker<br>*9/1/12 – 10/4/13* | (32 hours per week *<br>$29.80 hourly rate * 1.5 *<br>56 weeks = $80,102.40) | ($50 * 26 pay<br>periods) = $1,300 | $81,402.40 |
| Plaintiffs (Avg.) | | | $78,968.40 |
| Putative Class (100) | *(Assuming each putative class member is entitled to the same average amount of unpaid overtime as the average amount allegedly owed to the three named Plaintiffs)*[5] | | **$7,896,840** |

37. Thus, whether utilizing GLS's actual employment data, or extrapolating using a minimum class of 100 based on the dates of employment and amounts of unpaid overtime allegedly worked by the named Plaintiffs, it is clear that the twelfth cause of action *alone* places more than $5 million in controversy.

---

[5] GLS and DynCorp can make this assumption because it is "supported directly by, or reasonably inferred from, the allegations in the complaint." *Altamirano*, 2013 WL 2950600, at *10-*11; *see also Behrazfar. v. Unisys. Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009). Here, the twelfth cause of action for wage-and-hour violations alleges that Defendants failed to provide overtime wages *equally* to the named Plaintiffs and the putative class members. Compl. ¶¶ 157-58. Nowhere in this cause of action do the named Plaintiffs state that their right to recover wages is any different than that of the putative class members. As such, it is reasonable to infer that the putative class members are owed approximately the same overtime wages as the purportedly representative named Plaintiffs.

Gibson, Dunn &<br>Crutcher LLP

12

DEFENDANTS' NOTICE OF REMOVAL OF CLASS ACTION

**(2)** ***Plaintiffs' Claim for Wages Not Timely Paid Upon Termination or Resignation Places at Least an Additional $1 Million in Controversy***

38.     In the thirteenth cause of action in the Complaint, Plaintiff Farag, on behalf of himself and the putative class, asserts that Defendants violated California Labor Code §§ 201-202, by "willfully" failing to pay him and the putative class "their wages . . . earned and unpaid either at the time of discharge, or within seventy-two hours of leaving Defendants' employ." *Id.* ¶ 162.   He seeks on his behalf and on behalf of the putative class "statutory penalty wages for each day they were not paid, at their regular hourly rate of pay, up to a thirty (30) day maximum pursuant to California Labor Code § 203." *Id.* ¶ 165.

39.     Under Labor Code § 203, "[i]f an employer willfully fails to pay, without abatement or reduction . . . wages of an employee who is discharged or who quits, the wages shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced," for up to a maximum of 30 days. Cal. Lab. Code § 203; *see also Altamirano*, 2013 WL 2950600, at *12.   California courts have held that claims for unpaid wages under Labor Code § 203 are subject to a three-year statute of limitations.   *See Montecino v. Spherion Corp.*, 427 F. Supp. 2d 965, 967 (C.D. Cal. 2006); *see also Pineda v. Bank of Am., N.A.*, 241 P.3d 870, 879, 50 Cal. 4th 1389, 117 Cal. Rptr. 3d 377 (Cal. 2010).

40.     Based on GLS's records, GLS has employed 1,021 linguists in the Middle East who were terminated or resigned during the three years prior to the filing of the Complaint. *See* Phillips Decl. ¶ 10.

41.     Applying the percentages of Arabic-speaking and California-resident linguists in the total linguist population in the Middle East during the relevant time-frame to this population, that means 90.6% of the 1,021 linguists who were terminated or resigned were Arabic-speaking, and 14.7% of these 925 Arabic-speaking linguists had permanent residence addresses in California.   In other words, there were

DEFENDANTS' NOTICE OF REMOVAL OF CLASS ACTION

Gibson, Dunn & Crutcher LLP

approximately 135 Arabic-speaking, California-based linguists who were terminated or resigned during this time-frame (1,201 * 90.6% * 14.7% = 135).

42.     Under the most conservative calculation, using the lowest possible annual salary for *all* linguists who were terminated or resigned during this time-frame, the amount placed in controversy by this claim is approximately *$1.4 million*, calculated as follows:

| | |
|---|---|
| Amount Allegedly Due per Class Member | $10,728.00 |
| (30 Days * 12 Hours per Day * $29.80/Hour) | |
| Total Amount for Putative Class (135) | *$1,448,280* |

43.     Likewise, even without relying on GLS's data regarding the actual number of linguists who were terminated or resigned during the relevant time-frame, this claim—at a minimum—places over $1,000,000 in controversy based on Plaintiffs' *own* allegations that they are, in fact, representative of the putative class members they seek to represent.   Plaintiff Farag alleges that he is representative of a putative class of at least 100 individuals. *See* Compl. ¶ 43(a).  Using the lowest possible annual salary for CAT-I linguists during this time-frame ($62,000, *see* Phillips Decl. ¶ 7), the amount allegedly due to a putative class of 100 for this claim, based only on Plaintiff Farag's own allegations, can be calculated as follows:

| | |
|---|---|
| Amount Allegedly Due to Plaintiff Farag | $10,728 |
| (30 Days * 12 Hours per Day * $29.8/Hour) | |
| Total Amount for Putative Class (100) | *$1,072,800* |

   **(3)     *Plaintiffs' Request for Attorneys' Fees Also Places at Least an Additional $2.2 Million in Controversy***

44.     In addition to their claims for unpaid overtime and for wages not timely paid upon termination or resignation, Plaintiffs also seek an award of reasonable attorneys' fees. *See* Compl., Prayer for Relief, ¶16.

45.     Where attorneys' fees are statutorily available, requests for such fees are properly considered in assessing whether the amount in controversy has been satisfied

14

1   for purposes of removal. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir.

2   1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either

3   with mandatory or discretionary language, such fees may be included in the amount in

4   controversy."); *see also Deaver v. BBVA Compass Consulting and Benefits, Inc.*, --- F.

5   Supp. ----, 2013 WL 2156280, at *4 (N.D. Cal. May 17, 2013) (explaining that "the

6   'amount in controversy' under CAFA includes fees").

7       46.   Here, California Labor Code § 1194(a) expressly authorizes the recovery

8   of attorneys' fees in actions to recover unpaid overtime, while California Labor Code §

9   218.5 likewise provides for an award of attorneys' fees to the "prevailing party" in any

10  action "for the nonpayment of wages."

11      47.   Under the Ninth Circuit's well-established precedent, "25% recovery is

12  the 'benchmark' level for reasonable attorney's fees in class action cases." *See*

13  *Garibay v. Archstone Cmtys. LLC*, --- Fed. App'x. ----, 2013 WL 4517934, at *1 (9th

14  Cir. Aug. 27, 2013) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir.

15  1998)). Here, GLS and DynCorp have established that the total amount placed in

16  controversy by only two of the sixteen causes of action in the Complaint is at least $8.9

17  million. Moreover, Plaintiffs have not indicated that they will seek attorneys' fees in

18  an amount less than 25% of their total recovery. Although GLS and DynCorp have

19  shown that the amount in controversy absent attorneys' fees surpasses the

20  jurisdictional threshold—and although GLS and DynCorp deny that any attorneys'

21  fees are owed in this case—the Court should nonetheless take account of Plaintiffs'

22  alleged entitlement to attorneys' fees in evaluating whether the amount in controversy

23  has been satisfied for purposes of removal jurisdiction. *Garibay*, 2013 WL 4517934,

24  at *1 (citing *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007)).

25      48.   Using the twenty-five percent benchmark figure for attorneys' fees, and

26  using GLS and DynCorp's most conservative estimates for the amount placed in

27  controversy by Plaintiffs' claims for unpaid overtime and for wages not timely paid

28  upon termination or resignation (rather than the more accurate estimates based on

GLS's actual employment data), the estimated attorneys' fees based on these two causes of action alone is approximately *$2,225,000,* calculated as follows:

| Alleged Unpaid Overtime | $7,900,000 (* 25%) |
|---|---|
| Alleged Wages Not Timely Paid Upon Termination or Resignation | $1,000,000 (* 25%) |
| Attorneys' Fees in Controversy | *$2,225,000* |

49.     This estimate for attorneys' fees is, in fact, below the median attorneys' fee for class action settlements in the Central District of California from 1993 to 2008. *See* Theodore Eisenberg & Geoffrey Miller, *Attorneys' Fees and Expenses in Class Action Settlements,* 7 J. EMPIRICAL LEGAL STUD. 248, 255 (2010) (finding that the median attorneys' fee in class action settlements in the Central District of California was $2.75 million).

50.     All told, Plaintiffs' allegations regarding unpaid overtime, standing alone, place at least $7.9 million in controversy. Plaintiffs' claim regarding wages not timely paid upon termination or resignation places at least an additional $1 million in controversy. Thus, in total, just two out of Plaintiffs' sixteen causes of action—as well as the attorneys' fees thereon—place *a minimum of $11.1 million* in controversy for removal purposes.[6]

51.     Based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because:

(a)     This is a civil action which is a class action within the meaning of § 1332(d)(1)(B);

---

[6] In Plaintiffs' fourteen other claims, Plaintiffs seek a variety of other damages including, but not limited to, medical expenses, emotional distress, front pay, and punitive damages. All of these other alleged damages further prove that GLS and DynCorp have demonstrated, "by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." *See Rodriguez v. At&T Mobility Servs. LLC,* 728 F.3d 975, 981 (9th Cir. 2013).

(b)    The action involves a putative class of at least 100 persons as required by Section 1332(d)(5)(B);

(c)    The amount in controversy exceeds $5 million, exclusive of interest and costs as required by Section 1332(d)(2); and

(d)    A member of the class is a citizen of a state different from any defendant as required by Section 1332(d)(2)(A).

Accordingly, this action is removable under 28 U.S.C. §§ 1441, 1446 and 1453.

## IV.    THE COURT HAS DIVERSITY JURISDICTION BASED ON THE FRAUDULENT JOINDER OF DEFENDANT AECOM SERVICES, INC.

52.    In addition to CAFA jurisdiction, this Court also has original jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the amount in controversy for each Named Plaintiff exceeds $75,000, exclusive of interests and costs[7] and the citizenship of AECOM Services, Inc. need not be considered in assessing whether there is complete diversity. As explained further below, AECOM Services, Inc. was fraudulently joined as a defendant. *See, e.g., Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (explaining that "one exception to the requirement for complete diversity is where a non-diverse defendant has been 'fraudulently joined'").

53.    First, as shown above, both Plaintiff Zaklit and Plaintiff Shaker meet the $75,000 jurisdictional threshold for removal based *solely* on their respective claims for unpaid overtime. *See, supra*, at 12. Plaintiff Farag likewise surpasses the $75,000 jurisdictional threshold, based only on his two claims for unpaid overtime and for wages not timely paid upon termination or resignation. *See id.* at 12, 14.

---

[7] *See generally Bates v. General Nutrition Ctrs., Inc.*, 897 F. Supp. 2d 1000, 1003 (C.D. Cal. 2012) (explaining that individual class members in a putative class action "must show that their individual claims exceed $75,000" in order for removal to be proper under 28 U.S.C. § 1332).

Gibson, Dunn & Crutcher LLP

DEFENDANTS' NOTICE OF REMOVAL OF CLASS ACTION

54.     Second, there is complete diversity between the parties, excluding AECOM Services, Inc. *See id.* ¶¶ 16-18 (explaining that the named Plaintiffs are all citizens of the state of California, while GLS and DynCorp are citizens of Delaware and Virginia); *see also* 28 U.S.C. § 1441(b) (specifying that the "citizenship of defendants sued under fictitious names shall be disregarded" in determining whether an action is removable on the basis of diversity).

55.     Third, it is clear that AECOM Services, Inc. has been "fraudulently joined" as a defendant in this case.  As a result, its alleged California citizenship is immaterial for purposes of assessing whether the requirements for complete diversity have been satisfied.  Where a "plaintiff fails to state a cause of action against a resident defendant, and the failure is so obvious according to the settled rules of the state," then that resident defendant's presence is ignored for purposes of determining diversity due to the fraudulent joinder of that defendant. *Morris*, 236 F.3d at 1067.

56.     Fraudulent joinder is a "term of art" and does not require a finding of fraudulent intent on the part of plaintiffs or their counsel. *Id; see also Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1137 (S.D. Cal. 1998) (allowing removal and noting that fraudulent joinder "is not intended to impugn the integrity of Plaintiff or his counsel").  When resolving claims of fraudulent joinder, a court may pierce the pleadings and rely on evidence such as affidavits and declarations to make factual determinations as necessary. *Morris*, 236 F.3d at 1068; *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (stating that the defendant seeking removal is "entitled to present the facts showing the joinder to be fraudulent").

57.     Here, AECOM Services, Inc. is the only California resident that Plaintiffs have named as a defendant.  AECOM Services, Inc., however, does not have any relation to Plaintiffs or to the facts alleged in Plaintiffs' Complaint.  Plaintiffs' claims arise from their employment as linguists for GLS—a relationship governed by Plaintiffs' employment agreements with GLS.  None of the named Plaintiffs or the putative class members were employed by AECOM Services, Inc. *See* Miller Decl. ¶¶

18

Gibson, Dunn &
Crutcher LLP

1   4-5.[8] Nor did AECOM Services, Inc. have any involvement with a U.S. Government

2   contract regarding the deployment of linguists to Kuwait. *Id.* ¶ 5.

3       58.   As AECOM Services, Inc. was not Plaintiffs' employer, had no

4   connection to Plaintiffs' employer, and was not otherwise involved with Plaintiffs in

5   any manner, it is obvious that the Complaint fails to state a cause of action against

6   AECOM Services, Inc. *See Jernigan v. Ashland Oil Inc.,* 989 F.2d 812, 817 (5th Cir.

7   1993) (finding fraudulent joinder due to plaintiff's confusion as to two similarly named

8   companies); *Zogbi v. Federated Dep't Store,* 767 F. Supp. 1037, 1041 (C.D. Cal. 1991)

9   (finding fraudulent joinder of individual defendants in claims for breach of

10  employment contract when defendants were not parties to the employment contract);

11  *cf. Salkin v. United Servs. Auto. Ass'n,* 767 F. Supp. 2d 1062, 1069 (C.D. Cal. 2011)

12  (finding fraudulent joinder of parent corporation who had no role in the issuing or

13  rescinding of plaintiffs' insurance policy, which was the basis of plaintiffs' claims).

14      59.   Plaintiffs' claims arise from their employment as linguists in Kuwait,

15  which did not involve AECOM Services, Inc., and there are no material allegations

16  against AECOM Services, Inc. in the Complaint. *See Brown v. Allstate Ins. Co.,* 17 F.

17  Supp. 2d 1134, 1137 (S.D. Cal. 1998) (finding fraudulent joinder of three defendants

18  who were named in the caption and in the headings of some causes of action but no

19  material allegations were otherwise made against those defendants). Accordingly,

20  _____

21  [8] AECOM Services, Inc. believes that the named Plaintiffs may have meant to name

22  AECOM National Security Programs, Inc. instead of AECOM Services, Inc., as a

23  defendant in this action. *See* Miller Decl. ¶¶ 4, 6.   AECOM National Security

24  Programs, Inc., a Virginia corporation, is a minority member of GLS. *Id.* ¶ 6.

25  Defense counsel repeatedly informed Plaintiffs' counsel of the distinction between

26  AECOM Services, Inc. and AECOM National Security Programs, Inc., and even

27  provided Plaintiffs' counsel with the Declaration of Robyn Miller, but Plaintiffs'

28  counsel have not taken any action to correct the wrongly-named defendant.

AECOM Services, Inc. has been fraudulently joined as a defendant in this case, and there is thus complete diversity of citizenship between the parties.

## V.  VENUE

60.  The U.S. District Court for Central District of California, Western Division is the federal judicial district in which the Los Angeles Superior Court sits. This action was originally filed in Los Angeles Superior Court, rendering venue in this federal judicial district and division proper for the limited purpose of removal.  28 U.S.C. § 84(c); *see also* 28 U.S.C. § 1441(a).[9]

---

[9] Although the U.S. District Court for the Central District of California is the appropriate venue for removal purposes given that Plaintiffs filed this Complaint in Los Angeles Superior Court, Defendants contest that the Central District is the proper venue for this action.  Plaintiffs' Complaint neglects to mention that there is a Virginia forum-selection clause in Plaintiffs' employment contracts with GLS. Defendants reserve all rights to move to dismiss Plaintiffs' Complaint post-removal, and/or to move to transfer this case to the U.S. District Court for the Eastern District of Virginia.  *See, e.g., Inter-Ocean Seafood Trader, Inc. v. RF Int'l, Ltd.*, C-11-06675 JCS, 2012 WL 1601326, at *3 (N.D. Cal. May 7, 2012) (explaining that "where there is a forum selection clause, a party may seek dismissal for improper venue even after removal to federal court"); *see also Prestar Fin. Corp. v. Infraegis, Inc.*, SACV 09-899 AG RNBX, 2009 WL 3425348, at *3 (C.D. Cal. Oct. 19, 2009) (rejecting the argument that removal under 28 U.S.C. § 1441(a) forecloses the removing party from subsequently claiming that venue is improper as a result of a forum-selection clause); *Tokio Marine & Fire Ins. Co. v. Nippon Express U.S.A. Inc.*, 118 F. Supp. 2d 997, 999-1000 (C.D. Cal. 2000) (holding that "defendants have not waived their right to enforce the forum selection clause based upon their removal to this Court").

Gibson, Dunn & Crutcher LLP

20

## VI.   CONCLUSION

61.   GLS and DynCorp hereby respectfully remove this action from the Superior Court of the State of California for the County of Los Angeles to this Court. Upon filing the Notice of Removal, GLS and DynCorp will furnish written notice to Plaintiffs' counsel, and will file and serve a copy of this Notice with the Clerk of the Los Angeles Superior Court, as required by 28 U.S.C. § 1446(d).

Dated: November 22, 2013

KATHERINE V.A. SMITH
JASON C. SCHWARTZ
GIBSON, DUNN & CRUTCHER LLP

By: _____
Katherine V.A. Smith
*Attorneys for Global Linguist Solutions LLC*

JON P. KARDASSAKIS
ERIC Y. KIZIRIAN
MICHAEL K. GRIMALDI
LEWIS   BRISBOIS   BISGAARD   &   SMITH, LLP

By: _____ /s/ _____
Eric Y. Kizirian
*Attorneys for DynCorp International LLC*

Gibson, Dunn &
Crutcher LLP

21

DEFENDANTS' NOTICE OF REMOVAL OF CLASS ACTION

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Margaret M. Morrow_____ and the assigned Magistrate Judge is _____Margaret A. Nagle_____ .

The case number on all documents filed with the Court should read as follows:

### 2:13-CV-8654-MMM (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____November 22, 2013_____
Date

By _MDAVIS_____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| ☒ Western Division | ☐ Southern Division | ☐ Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**


COPY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| Alfred Zaklit, Hany Shaker, and Mokhtar Farag | Global Linguist Solutions LLC, DynCorp International LLC, and AECOM Services, Inc. |

| (b) County of Residence of First Listed Plaintiff _____ <br> *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant _____ <br> *(IN U.S. PLAINTIFF CASES ONLY)* |
|---|---|
| (c) Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. <br><br> Gary R. Carlin <br> Law Offices of Carlin & Buchsbaum LLP <br> 555 E. Ocean Blvd., Long Beach, CA 90802 <br> (562) 432-8933 | Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. <br><br> Katherine V.A. Smith <br> Gibson, Dunn & Crutcher LLP <br> 333 South Grand Ave., Los Angeles, CA 90017-3197 <br> (213) 229-7000  (Attorneys for Global Linguist Solutions LLC) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding

☒ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No  (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No    ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Removal is proper under the Class Action Fairness Act, 28 U.S.C. §§ 1332(d)(2); 1332(d)(6), or, in the alternative, on the basis of complete diversity, 28 U.S.C. § 1332(a)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL PROPERTY** | **TORTS** <br> **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influ- enced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Com- modities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury- Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury- Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities- Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☒ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**CV13-08654**

| FOR OFFICE USE ONLY: | Case Number: | |
|---|---|---|
| CV-71 (11/13) | CIVIL COVER SHEET | Page 1 of 3 |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A:  Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☒ Yes ☐ No<br><br>If "no," go to Question B.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☒ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B:  Is the United States, or one of its agencies or employees, a party to this action? | In the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF?<br>Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT?<br>Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| ☐ Yes ☐ No<br><br>If "no," go to Question C.  If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims (Make only 1 selection per row) | A.<br>Los Angeles County | B.<br>Ventura, Santa Barbara, or San Luis Obispo Counties | C.<br>Orange County | D.<br>Riverside or San Bernardino Counties | E.<br>Outside the Central District of California | F.<br>Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**C.1. Is either of the following true?  If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D,  below.

If none applies, answer question C2 to the right.  ➡

**C.2. Is either of the following true?  If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D,  below.

If none applies, go to the box below.  ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above:  ➡ | Western |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court** and dismissed, remanded or closed?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**: Have any cases been previously filed **in this court** that are related to the present case?  ☒ NO  ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):**  DATE: 11-22-2013

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |